Good morning. Zandra Lopez of the Federal Defenders of San Diego on behalf of Ms. Regina Wagamott. And I will also be arguing for co-defendant Elijah Delossantos. As stated by the Supreme Court in garrison, officers are required to discontinue a search as soon as they discover there are separate units on the property and are put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. In this case, by the time that the ATF agents completed the protective sweep of the property and before they conducted the search, the agents were already aware that there was sufficient facts and information that the house contained separate living units, such that they were obligated to stop before conducting a search of Ms. Wagamott and Mr. Delossantos' room. In this case, the timing is important. From the time that the agents first entered the property to the time that they conducted the search of Ms. Wagamott and Mr. Delossantos' room, the agents had observed sufficient facts indicating that there were rooms in that property that were not shared in common and that were private rooms. One of the rooms was exclusively possessed by the target of the warrant and another was exclusively possessed by Ms. Wagamott and Mr. Delossantos. Did the agents know who primarily resided in any of those rooms, though? Yes, Your Honor. Again, when they entered, they had about 20-30 minutes to do a protective sweep of the house. They did one initial sweep and then they did a second initial sweep. After that protective sweep and before the search was started, the lead investigator that investigated the case wrote the warrant and was directing the search. She testified that she looked into every single room and she did this in order to visualize what room was what. During this time, they learned that the target of the warrant had exclusive possession of the detached room outside. They found him coming out of the detached room outside and they detained him and they set him aside. Then they saw the detached unit that was not physically connected to the room, I mean to the house, and they found it had a doorknock, it had a padlock, and they forcibly entered that room. Once they entered, they saw personal belongings specifically to the target. They found pictures of him. They found items that would normally be found in a bathroom such as toiletries, medication. They found that he had been urinating in cups. They found items that would commonly be found in a kitchen such as food. But was there actually a kitchen in that area? There wasn't a kitchen in the detached room. There was only one kitchen. Yes, there were common areas within the house. There was a kitchen, there was a bathroom. But these private bedrooms were exclusively their own. So when did they learn from Ms. Stanberry that Ricardo used all parts of the house or something to that effect? He used both the detached bedroom and another bedroom in the main house. That's right. While they were conducting the search, Mr. Ricardo, the target, his girlfriend came to pick him up, and she informed the agent that his was the detached unit, but he also used another room within the main house, but that was not Ms. Wagemont and Mr. DelaSantis'. But wouldn't that information have given the officers reason to search the main house, even if we conclude that Ricardo's unit was separate? Well, it may have shown that the agents could have searched the detached unit, and it showed that they could have searched the common areas and the room used by Ricardo within the house. But the private bedroom of Ms. Wagemont and Mr. DelaSantis was held out to be exclusively their own. There was no indication that Ricardo had... Well, you keep using the word exclusive. And these are brothers, and it's a family. And they knew before they went in that this was a multifamily house. So I'm not quite sure when you say exclusive how they would know that no one else had anything of their own inside that room. Well, Mr. DelaSantis and Ricardo were brothers, yet they were brothers with their own wives or their own girlfriends and their own children. The relationship between Ms. Wagemont and Mr. DelaSantis was as a couple, and as a society, we expect that as such, they would have a private bedroom to their own. And in this situation, Mr. DelaSantis and the target are family members, but they were living within the same house because of economic reasons and to put a roof over their head. And it can't be said that because they've decided to make this type of living arrangement that Ms. Wagemont and Mr. DelaSantis were giving up all their rights to a room that they believed was their private bedroom. Can I ask you a question, setting all of that aside? I understand that the agents didn't get a search warrant to go in and search for Elijah and Regina, but would the probable cause to get that search warrant be any different for them as to the individual that they actually did get? Right. So the probable cause was directed to finding information that was readily accessible to Ricardo. And the offense that they were investigating was a felon in possession of firearms. Well, but wasn't there a probable cause in existence that Elijah and Regina also were in possession of firearms? If there was probable cause, then the agents should have gotten a warrant. And they had reason to believe that this private bedroom didn't fall within the warrant, and they should have taken a step back and they should have gotten a warrant. Nowadays it's very easy to send an email, a fax, or a call. There was no reason to expect that the evidence would be destroyed. The house was cleared. The agents were there. That would have been the easiest thing to do. I see I have two minutes of my time. May it please the Court, this is Zach Howe on behalf of the United States. The District Court properly found that this was a single dwelling unit. The house is located at a single address, has no numbers or letters indicating separate residences, has a single full bathroom, a single kitchen, a single set of laundry facilities, a single set of common areas. None of the bedrooms contain any of that or any other indicia of a separate living unit. And on top of all of that, this residence is occupied not by strangers or renters or boarders or some individuals in a commercial relationship, but by family members. And the District Court properly found that family members would be more likely to organize the residence as a single unit. So the Court was on firm footing in saying that the detached bedroom, which was fenced into the backyard and just a few feet from the main house, was in fact part of that single dwelling unit. What is the closest case to this one that we should look for guidance? I think the Hart case, which is an unpublished case from this Court, but I think it's persuasive here. It's not precedential. Do we have a precedential case that we should look to if you're writing our opinion? We're controlled by... I think the Mina case is helpful. In that case, this Court held that agents would not have known that there were separate residences when they entered a house, even though there were unrelated individuals living in that house and even though the doors were locked. It held that the agents would only have known that once they entered into the rooms and found that, in fact, they were studio apartments. So here I think this case is even stronger because we're not talking about unrelated individuals. We're talking about a family, and we're not talking about a studio apartment. We're talking about a bedroom. That bedroom didn't have a closet. It didn't have a sink. It didn't have a kitchen. It didn't have laundry facilities. It didn't have a bathroom. It didn't have any of the indicia that would suggest that it was a separate dwelling unit or any sort of bedroom that was being used exclusively. The final point I'll make, and this was referenced by defense counsel, and it seems to be a theme that runs throughout some of the briefs, the agents didn't need to establish probable cause as to every individual living within the house. It was perfectly permissible under Ayers to establish probable cause to search the house based on the probable cause related to Ricardo. In fact, Ayers says that probable cause to search a residence based on one of multiple occupants of a single family residence is valid to allow a search of the entire unit. Does that still apply when, I mean, as I understand, if I remember right, the guns that they found were in a safe, and they had to find the combination and open it up, and it clearly belonged to somebody else other than Ricardo. Is there ever a point at which you say, wait a second, this is, yes, we have a search warrant that allows us to search the entire premises, but this is clearly something that is different than related to the purpose of the search warrant? Possibly, Your Honor. In this case, though, I don't think the agents actually did know that that safe didn't belong to Ricardo, and the reason is because, this is referenced at page 148 of the record, the agents searching the house, there were 10 to 12 of them, that was the estimate, and they did the search simultaneously. So there were actually different individuals searching the different rooms. So one of the agents may have realized, hey, this is Ricardo's bedroom, it's blocked off, he seems to be living here, but some of the other agents might not have had that information. Is that the government's position then? I actually don't think any, there's no evidence that any agent realized whose room was whose. In fact, at page 183 through 184 of the record, the lead investigator, Agent Esonia, says that they didn't know who all these papers in the rooms belonged to. A lot of papers with De Los Santos and Wolgamott's names on them were put into the record to show that they only used this one particular bedroom. But of course, there's no reason to think that the agents would have been aware of that because they weren't searching for mail or personal items, they were searching for guns. So they would have been looking at the physical items and the safes and trying to find those guns as opposed to looking at mail. So I don't think there's any evidence here that they knew at any time whose room belonged to who. Is the sole question that we need to decide whether this is a single-family residence that was covered by the search warrant or is there an alternative argument that the government would have? Is there some basis? I guess I'm a little bit confused why the government or why the agents didn't just go in and get a search warrant for Elijah and Regina as well. They knew that they lived there, correct? That's correct. And so they knew, and they already had an investigation going. I think it's, as you pointed out in the brief, they didn't make a misrepresentation to get the search warrant, but they also, it would have been so easy to do it and avoid this whole situation. Why didn't they just do that? I think the reason is perhaps because the information they had at the time they sought the search warrant, at least as far as I can tell, is that the most recent pictures they had of Elijah De Los Santos on Facebook with guns were three or four years old. So they had no reason to suspect necessarily that they would find guns relating to Elijah, whereas Ricardo, the Facebook photos they found were quite recent. And so I think that, taken in conjunction with the fact that the investigation originated with Ricardo, it was much more robust as to Ricardo, and they just had much better evidence. So there actually was a difference in the probable cause that they would have for Ricardo versus the other two. Because it was a recent Facebook page, is it? That's correct. That's what set off the investigation of Ricardo. That's right. They got a tip about a Facebook page, and that's what led to the investigation. But I think the important case on this point would be the Fernandez case and the Craighead case that we cite, which say that if there is information omitted from a search warrant and it would not have undermined probable cause or perhaps would have even increased probable cause, then it didn't need to be included in the warrant. So agency or established probable cause as to the residence, that was sufficient. And then I think the final point that Judge Lefkow referenced is that agents did learn during the search that Ricardo did occupy the main house as well. So since agents had a warrant to search Ricardo's residence, that was Ricardo's residence, even if you assume that this was two separate dwelling units. So I think just to make clear what our arguments are, this is one dwelling unit, but even if it was not, agents would not have reasonably realized that it was multiple dwelling units. And even if it was multiple dwelling units and perhaps they should have realized it, the residence they had probable cause to search included the main house because Ricardo lived there. So if there are no other questions, then I'm happy to yield the remainder of my time, and I would ask that this court affirm. I think we might have one more question. How do you reconcile what seems to be the law of this circuit, that a room cannot be considered a separate unit where it was not rented out to a third party? How do you reconcile that with the principle of RACUS versus Illinois, that the test we are to apply is whether a person had a reasonable expectation of privacy in their space, which seems to be the point that the defendant is making here? Sure, and I think that comes from Katz as well. So I think that principle stands for the notion that for a place to even fall within the realms of the Fourth Amendment, someone must have a reasonable expectation of privacy in it. So, for example, in the Katz case, it was a public phone booth, and the court said because there was a reasonable expectation of privacy in that phone booth by the person in the booth, you needed a warrant to search that phone booth. But that line of cases says nothing about the requirements for what it takes to get a warrant or what's permissible when you have a warrant. And your position is that the warrant covered this room? That's exactly right. Thank you. Thank you, counsel. Thank you. I'd just like to cover a couple of points. First, factually, I think opposing counsel mentioned that there was no reason for the agents to know what room belonged to whom at the time of the search, and that's factually not the case. That may have been true with the time that they requested the warrant, but again, before the search was even conducted, the agents' excerpt of record 149, 143, 119, they did all of these things before even conducting a search. And the lead investigator herself indicated that she went through the rooms  Well, it's also her testimony that she was the lead investigator and she was directing the investigation. She was directing the other agents as to what they would do. And also, Ms. Walgemont's infant son was in her bedroom at the time that the agents went into the house. Second, even if they believe that they had probable causes to the entire house, once they entered the house, Garrison and Mena all say that once they determine that there are multiple units, they still need to get a warrant. And finally, again, this is the type that the agent at the time also testified that she had the intention, she suspected that Mr. De Los Santos and Ms. Walgemont were felons in possession of a firearm and that Ms. Walgemont was helping him, and she suspected that she would find this. So again, if she wanted to search their private bedroom, she should have gotten a warrant. Are you aware of any case where a court has held that a unit was separate, where there was no separate kitchen or bathroom or not occupied by a rental? Mena involved what looked like a bedroom. It was small. The distinction is there they had a refrigerator and some cooking supplies, but there's no evidence that Mena had a bathroom. So the case law shows that even when there are certain things used in common, that doesn't mean that individuals are giving up their privacy within the rooms that they have indicated that they have exclusive control. Thank you. Thank you, Counsel. Thank you. The case is submitted.
judges: Schroeder, Lefkow, Nelson